Filed 8/1/14  Marble v. Fibiger CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRIS MARBLE, as Administer, etc. | B253266 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. KP014023) |
| LORA FIBIGER, as Trustee, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas C. Falls, Judge.  Affirmed in part; reversed in part.

James S. Link for Defendant and Appellant.

David K. Kroll for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant, Lora Fibiger, appeals from a December 2, 2013 Probate Code section 17200[1] judgment. Chris, Aaron and Brian Marble,[2] and Joey Hendricks, filed a petition for a determination whether they or their mother, Cynthia Ayala, were beneficiaries of the Porter Family Trust. Defendant and Ms. Ayala were sisters and beneficiaries of the Porter Family Trust. Defendant also served as trustee. The probate court found that plaintiff's mother was a beneficiary and the survivorship clause did not bar her interest in the trust. Plaintiff is the administrator of his mother's estate. Plaintiff filed a petition seeking a determination that defendant breached her fiduciary duty and committed financial abuse of a dependent adult and undue influence. The probate court found for plaintiff and granted general and punitive damages and attorney's fees for violations of section 859 and Welfare and Institutions Code sections 15610.30 and 15657.5.

Defendant appeals from both rulings. Defendant contends Ms. Ayala was not a beneficiary. Defendant argues Ms. Ayala did not satisfy the survivorship requirement. Defendant also appealed the probate court's finding that financial abuse and undue influence occurred. We affirm the probate court's ruling concerning the survivorship clause. We reverse the findings of financial abuse and undue influence entered against defendant.

---

[1] Further statutory references are to the Probate Code unless otherwise noted.

[2] Future references to Aaron and Brian Marble will, for clarity's purpose, be by their first names. Chris Marble will be referred to as plaintiff.

## II. BACKGROUND

### A. The Porter Family Trust

On November 15, 1990, Kenneth Allan and Doris Joy Porter established the Porter Family Trust. The Porters were the settlors and first co-trustees. Defendant, named as "Lora Ann Breton," and Cynthia Ayala, named as "Cynthia Lee Hendricks," were sisters and the Porters' adult children. The trust provided income for the settlors while they lived.

In Article 3 of the Porter Family Trust, the first settlor to die would be known as "the deceased spouse." The remaining living settlor would be "the surviving spouse." The surviving spouse's interest in the community trust estate and separate trust estate would be allocated to "the Surviving Spouse's Trust." Concerning the remaining assets, Article 3, section 4.1.1 provides: "The trustee shall allocate the following gifts from the remainder of the deceased spouse's interest in the community trust estate and the deceased spouse's separate trust estate: [¶] . . . [¶] Exemption equivalent gift beneficiary: Family Bypass Trust." The surviving spouse could revoke and amend the surviving spouse's trust. But the family bypass trust (bypass trust) became irrevocable upon the death of the first settlor. Thus, the surviving spouse could not amend or revoke the bypass trust.

Article 7 of the Porter Family Trust discussed the bypass trust. The bypass trust listed the surviving spouse as the income beneficiary. The principal beneficiaries were the surviving spouse and "the settlors' descendants," defined as the settlors' children. Article 7, section 15.2.3 provides: "At the surviving spouse's death, the trustee shall distribute the trust estate as follows: [¶] . . . [¶] The trustee shall distribute the balance of the trust estate in equal shares to the settlors' children, CYNTHIA LEE HENDRICK and LORA ANN BRETON." Certain stocks were also distributed which were not at issue in this appeal.

Article 14 of the Porter Family Trust discussed various definitions, contesting the trust and disinheritance.  Section 7.3.2, the survivorship requirement, provides:  "The surviving spouse must survive the deceased spouse for six (6) months before entitlement to all gifts from the deceased spouse.  For all gifts to other beneficiaries, the beneficiary must survive the donor-settlor for sixty (60) days before entitlement to such gifts." Mr. Porter died on October 27, 2006.  The residual assets of both the surviving spouse's trust and the bypass trust were to be divided equally between the Porters' two children, defendant and Ms. Ayala, upon the surviving settlor's death.  On October 17, 2007, Ms. Porter signed amendment number two to the Porter Family Trust, amending the surviving spouse's trust to distribute its assets to defendant upon the surviving spouse's death.  Ms. Porter died on January 6, 2009.

## B.  Stipulated Facts Concerning The Hospital Documents

Ms. Ayala suffered from cancer and was hospitalized on or about February 20, 2009.  Ms. Ayala and defendant were previously named as co-trustees.  But Ms. Ayala signed a declination to serve as trustee on February 14, 2009.  While in the hospital, defendant presented Ms. Ayala with documents prepared by Lynn Huston, the same attorney who drafted the Porter Family Trust.  We refer to these papers as "the hospital documents."  Ms. Huston later represented defendant following Ms. Porter's death.  The hospital documents included:  a waiver of accounting and agreement regarding distribution (waiver and agreement), dated February 24, 2009; a receipt stating that Ms. Ayala acknowledged receiving a $125,000 check; in return, Ms. Ayala made a gift of the remainder of her interest under the bypass trust; the gift was to defendant; a handwritten document granting defendant permission to receive all assets in Ms. Ayala's checking account; an advanced health care directive naming defendant as Ms. Ayala's health care agent; and a purported will naming defendant as executor and bequeathing her estate to her children.  Ms. Ayala signed all the hospital documents.  The purported will was found to be invalid because Ms. Ayala affixed her signature to the wrong place.

4

The waiver and agreement provided that Ms. Ayala accepted a $125,000 cash settlement. In return, defendant received Ms. Ayala's interest in the Porter Family Trust. A notary public, Stacie Lynn Power, submitted an acknowledgement certificate of having witnessed Ms. Ayala sign the waiver. Concerning Ms. Ayala's lucidity, Ms. Power noted, "Ms. Ayala was very tired and had trouble holding the pen but she was able to coherently explain and consent to the content of the document." Ms. Ayala received no payments due her pursuant to the waiver and agreement prior to her death. No other facts concerning defendant's interactions with Ms. Ayala at the time the hospital documents were executed are set forth in the stipulation.

On March 4, 2009, Ms. Ayala died at the hospital. On March 16, 2009, defendant opened a bank account named the "Porter Family Trust [For The Benefit Of] Cynthia Ayala" and deposited $125,000 from the bypass trust into it. Defendant arranged for Ms. Ayala's funeral and paid funeral expenses from the account.

On July 2, 2009, Ms. Houston wrote to Beth A. Atuatasi. Ms. Atuatasi was the attorney for Ms. Ayala's estate. The letter states in part: "I am enclosing a copy of the initial deposit in the amount of $112,444.77 ($125,000 less funeral expenses). These funds will be turned over to the administrator when Letters are issued. I am also enclosing a copy of the cashier's check which paid the funeral costs, a copy of a deposit slip showing the account is [For The Benefit Of] Cynthia Ayala and a copy of the May bank statement." On January 8, 2010, Ms. Atuatasi wrote to Ms. Huston and stated in part: "Please be on notice that I have been retained as attorney to file a Petition for Administration of the Estate of Cynthia Ayala, with Cynthia's son Chris Marble to be nominated as Administrator of the Estate." Ms. Atuatasi wrote that defendant intended to file a petition to set aside the waiver executed on February 24, 2009, in the hospital by Ms. Ayala. The parties stipulated to the waiver and agreement, the receipt, and the document permitting defendant to receive all assets in Ms. Ayala's checking account would not be enforced.

5

C. Petitions To Establish Rights As Beneficiaries And To Construe The Trust

On April 29, 2010, plaintiff was appointed administrator of Ms. Ayala's estate. On January 18, 2011, plaintiff, Aaron, Brian, and Mr. Hendricks, filed a petition to establish status as beneficiaries under section 17200. The January 18, 2011 petition alleges, "[I]f any beneficiary did not 'survive the donor-settlor for 60 days', the descendants of such non-surviving beneficiary would take their deceased parent's share by right of representation." Ms. Ayala died 58 days after Ms. Porter's death. They alleged they were beneficiaries as a result and entitled to one half of the bypass trust's assets. They also alleged defendant breached her fiduciary duty by diverting the bypass trust assets to herself. They sought as relief: a determination they were beneficiaries of the Porter Family Trust as descendants of their mother, Ms. Ayala; an order directing defendant as trustee to immediately distribute the assets to which they have been entitled; a determination that defendant breached her fiduciary duties as trustee by committing fraud; that they be awarded punitive damages; and an order denying defendant any trustee's fees payable to the trust.

On February 17, 2011, defendant filed her response. Defendant alleged: Ms. Ayala died before the 60-day survivorship requirement for entitlement to the bypass trust; the survivorship requirement necessitated Ms. Ayala survive 60 days after Ms. Porter's death; and Ms. Ayala's children had no standing to challenge Ms. Porter's pour-over will and bypass trust.

On February 17, 2011, defendant filed her own petition to construe the trust under section 17200. Defendant repeated the foregoing allegations. Defendant contended section 21110 applied to bar Ms. Ayala's children from taking under the trust. Defendant also alleged that if Ms. Ayala's children were beneficiaries, they had violated the Porter Family Trust no contest clause.

On March 24, 2011, plaintiff filed his response to defendant's petition. He alleged in part that Ms. Ayala's estate was the beneficiary of the bypass trust. This was so

6

because Ms. Ayala survived her father by more than 60 days to satisfy the survivorship requirement.

## D.  Bifurcation Of Issues

On May 13, 2011, the parties submitted a joint trial statement on bifurcated issues. The parties submitted the following four issues whether:  the provisions of Article 7 of the Porter Family Trust designate Ms. Ayala or her children as beneficiaries of the bypass trust; the survivorship language in Article 14, section 7.3.2 of the Porter Family Trust preclude Ms. Ayala or plaintiff from having a beneficial interest; the provisions of section 21110 apply to negate such an interest; and Ms. Ayala or Ms. Ayala's children have such a beneficial interest, the probate court will determine what assets should be allocated from the Porter Family Trust to the bypass trust.  The parties stipulated that if either Ms. Ayala or Ms. Ayala's children were entitled to distributions, a further evidentiary trial would be necessary.  The parties stipulated to the Porter Family Trust and its various amendments, and the dates Mr. Porter, Ms. Porter, and Ms. Ayala died.

## E.  The Probate Court's Ruling On Entitlement To One-Half Of The Bypass Trust

On June 27, 2011, a hearing was held on the parties' petitions.   On July 18, 2011, the probate court issued its statement of decision.  The probate court interpreted the survivorship requirement to refer to the deceased spouse, Mr. Porter.  The probate court ruled:  "Chapter 14, Section 7.3.2 [the survivorship requirement] does not state the beneficiary must survive *the surviving spouse* for sixty (60) days.  Rather, it uses the term *donor-settlor*.  Words of the trust are determined from their 'ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained' (Probate Code § 21122).  Here the trust document at Article 3, Section 1.5 defines the term 'surviving spouse.'  *The first settlor to die shall be the "deceased spouse," and the living settlor the "surviving spouse."'*  Had the settlors

7

intended that both sisters needed to live 60 days beyond the death of the surviving spouse, they could have easily written it into the trust. They did not."

The probate court also noted the bypass trust existed upon Mr. Porter's death, was irrevocable, and contained no survivorship clause. The probate court also found the Porters intended the balance of the bypass trust to pass in equal shares to their children. The probate court concluded: Ms. Ayala's children had a beneficial interest to one-half of the bypass trust; the survivorship requirement did not preclude the children or Ms. Ayala's estate from being beneficiaries; and section 21110 did not apply. Ms. Ayala's children's January 18, 2011 petition was granted as to finding they were beneficiaries. Defendant's petition was denied. The asset distribution issue was set for a future hearing.

On July 28, 2011, defendant requested clarification of the July 18, 2011 statement of decision. Defendant contended that based on the probate court's ruling, the Ayala estate, not Ms. Ayala's children, was the beneficiary of the bypass trust. On October 25, 2011, the probate court issued its amended statement of decision finding the Ayala estate was the beneficiary of one-half of the bypass trust. No formal written order or judgment was issued by the probate court in connection with the statement of decision in 2011. The only documents promulgated by the probate court in 2011 in connection with this issue were the statement of decision and the minute order.

F. The Ayala Estate's Petition And Defendant's Petition To Settle Accounts

Plaintiff, as administrator of the Ayala estate, pursuant to sections 850, 856 and 859, filed a petition on January 23, 2012. The petition requests: a determination of ownership and a transfer to the estate; double damages under section 859; an accounting and damages for failing to provide an account within one year after Ms. Porter's death; a probate court order invalidating the hospital documents mentioned previously; damages for financial abuse of a dependent adult including attorney's fees and punitive damages; and for general and punitive damages for fraud.

8

On May 22, 2012, defendant filed her response. Defendant denied committing financial abuse, fraud, or undue influence in obtaining the signed hospital documents from Ms. Ayala. Defendant alleges the Ayala estate violated the no contest clause of the trust. (1 AA 175)~ On March 14, 2013, defendant filed a petition pursuant to section 17200, subdivision (b)(5), to settle the Porter Family Trust. Defendant included the first accounting of the trust.

### G. Stipulated Facts For Second Hearing

On April 9, 2013, the parties submitted their amended joint trial statement on the remaining issues. The parties submitted the following issues to the probate court: "[W]hen [Ms. Porter] transferred her own separate trust property bank accounts into accounts held in the name of the of 'the Porter Family Trust' by retitling them following the death of [Ms. Porter], does the trust provide that such bank accounts became part of the Bypass trust or are they part of the Surviving Spouse's trust?" A second issue was whether the Ayala estate triggered the no contest clause by claiming the bank accounts flowed into the bypass trust. The parties stipulated to the facts discussed in part II(B) of this opinion concerning the execution of the hospital documents.

The Ayala estate sought: general damages as defendant failed to provide an accounting within one year after Ms. Porter's death; general damages for breach of defendant's duty as trustee to distribute any bypass trust assets to the Ayala estate under section 850; general and punitive damages for financial abuse of Ms. Ayala as a dependent adult under Welfare and Institutions Code section 15610.30 resulting from the execution of the hospital documents; and double damages under section 859 for defendant retaining Ms. Ayala's share of the bypass trust assets and refusing to deliver them until compelled to do so by the probate court. The Ayala estate also requested defendant pay her own attorney's fees for litigation and pay the estate's attorney's fees for financial abuse of a dependent adult.

9

Defendant denied all the allegations. Defendant argues she provided an accounting after the probate court determined the Ayala estate had a vested interest in the bypass trust. Defendant contends she sought a good faith determination regarding whether Ms. Ayala or her children had a beneficial interest because of the survivorship clause. Defendant asserts no financial abuse because she never sought enforcement of the hospital documents and did not retain the bypass trust assets because of those papers. Defendant denied hiding or concealing property assets. Defendant maintained the Ayala estate violated the no contest provision and should be assessed all attorney's fees.

## H. The Probate Court's Second Order On Remaining Issues

On May 14, 2013, the probate court heard argument on the remaining issues. On June 4, 2013, defendant filed a motion to dismiss the financial abuse claim. On August 7, 2013, the probate court denied the dismissal motion.

On September 10, 2013, the probate court issued its statement of decision. The probate court requested the parties submit questions similar to a special verdict. The probate court: adjudicated the distribution of assets, finding the disputed accounts were to be split evenly between the survivor's and the bypass trusts; the Ayala estate did not violate the no contest clause; and the Ayala estate waived its claim for fiduciary duty breach damages because they would be duplicative of a judgment pursuant to section 850.

Concerning financial abuse under Welfare and Institutions Code section 15610.30, subdivision (a)(3), the probate court concluded: defendant took Ms. Ayala's property with the execution of the hospital documents; the taking was done with intent to defraud or for a wrongful use or undue influence; Ms. Ayala was harmed by defendant's act; defendant's conduct was a substantial factor in causing Ms. Ayala's harm; defendant took, obtained or retained Ms. Ayala's personal property, a dependent adult, by means of the waiver and agreement; defendant obtained the foregoing property while she was a trustee of the bypass trust which gave rise to a presumption of undue influence under

10

Civil Code section 1575; and the presumption was not rebutted. The probate court awarded the Ayala estate reasonable attorney's fees under Welfare and Institutions Code section 15657.5. The probate court found: defendant refused to distribute Ms. Ayala's beneficial interest based on the totality of the evidence, including the hospital documents; the Ayala estate was entitled to judgment under section 850, subdivision (a)(2)(D); defendant was subject to double damages under section 859; the legal fees incurred in construing the survivorship clause and the joint accounts were to be assessed against defendant, not the Ayala estate or the trust; and defendant fraudulently took Ms. Ayala's beneficiary interest in the Porter Family Trust by undue influence. The probate court awarded punitive damages under Welfare and Institutions Code section 15657.5.

On December 2, 2013, the probate court issued its judgment. Defendant subsequently appealed on December 12, 2013. The judgment is appealable as a final order under section 17200. (§ 1304, subd. (a); Code Civ. Proc., § 904.1, subd. (a)(10).)

## III. DISCUSSION

### A. Appealability

First, plaintiff argues that defendant expressly waived her right to appeal the October 21, 2011 order concerning the rights of beneficiaries. However, there is no language in any of the stipulated facts which indicates defendant expressly waived her right to appeal. The waiver of the right to appeal must be clear and express. (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 952; *Lovett v. Carrasco* (1998) 63 Cal.App.4th 48, 53.) Any doubt as to whether a waiver of the right to appeal has occurred must be resolved in favor of the appealing party. (*Guseinov v. Burns*, *supra*, 145 Cal.App.4th at p. 953; *Bischel v. Fire Ins. Exchange* (1991) 1 Cal.App.4th 1168, 1172.) In the absence of any language in any document indicating an intent to waive the right to appeal, the appeal may not be dismissed on this ground.

11

Second, plaintiff argues defendant's appeal from the October 21, 2011 ruling concerning the rights of beneficiaries is untimely. However, in connection with the October 21, 2011 ruling, the probate court never signed a contemporaneous judgment or order; it merely issued a statement of decision and a minute order. The probate court never directed that a judgment or other appealable order be prepared by any party. The issue is comparatively close but it is doubtful the October 21, 2011 statement of decision was a final order. (Prob. Code, § 1304, subd. (a).) The probate court did not rule on the parties' petitions with any degree of finality in the October 21, 2011 statement of decision. It is undisputed substantial future judicial action was necessary. Thus, this case falls within the general rule identified in *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901. (See *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 904; *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1570-1572.) Defendant's December 12, 2013 appeal from the October 21, 2011 order is timely.

### B.  The Survivorship Clause Did Not Bar Ms. Ayala From Her Share Of The Family Bypass Trust

Our Supreme Court has held:  "The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein. [Citations.]" (*Burch v. George* (1994) 7 Cal.4th 246, 254; *see Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 561 [same]; see § 21102, subd. (a) ["The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument."].) Our Supreme Court has explained: "Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. . . ." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 888.) Because the

12

interpretation of the survivorship clause required no extrinsic evidence, we review the probate court's order de novo.

Defendant argues the probate court erred in its interpretation of the survivorship clause. Defendant relies on Article 1, section 1.1.1 of the Porter Family Trust, which provides, "The term 'settlor' refers to one or both settlors." Defendant also cites to Article 14, section 7.4.2, which provides, "The masculine, feminine, or neuter gender and the singular or plural number shall each include the others whenever the context indicates." Defendant argues the survivorship clause requires, "For all gifts to other beneficiaries, the beneficiary must survive the donor-settlor for sixty (60) days before entitlement to such gifts." Defendant concludes that because "settlor" includes both the single and plural definition, the trial court erred by finding it meant only one settlor. Defendant maintains Ms. Ayala was required to survive both the Porters by 60 days in order for entitlement to the gift.

Defendant's argument is unpersuasive. Under Article 14, section 7.4.2, which defendant cites, "[T]he singular or plural number shall each include the others *whenever the context indicates*." [Italics added.] Defendant would have the meaning of "settlor" necessarily include "settlors." However, under Article 1, section 1.1.1, the term can mean either "settlor" or "both settlors." There is an ambiguity concerning the meaning of "donor-settlor" in the survivorship clause. Under section 21121: "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." We thus examine the context of the survivorship clause and the term "donor-settlor" in relation to the rest of the trust.

The survivorship clause refers to "gifts," which appear in Article 3. Article 3 describes what the trustee is to do when the first settlor, in this case, Mr. Porter, died. Article 3 requires the remainder of the deceased spouse's community and separate trust estate go as an exemption equivalent gift to the bypass trust. Thus, the bypass trust did not come into existence until the moment the deceased spouse, Mr. Porter, died. The

13

"gifts" referred to in the survivorship clause would reasonably refer to the settlor who provided it. It is the first settlor who provides the gift of the bypass trust upon his or her death. Therefore, the most reasonable conclusion is that "donor-settlor" in the survivorship clause refers to Mr. Porter. Other terms in the Porter Family Trust support this interpretation. As noted by the probate court, the bypass trust became irrevocable upon the first settlor's death. The bypass trust also named the settlors' children as principal beneficiaries of the gift.

Defendant contends the entitlement to a gift occurs when it is distributed. The bypass trust distributes its assets to the settlors' children (defendant and Ms. Ayala) upon the surviving spouse's (Ms. Porter's) death. Defendant argues the survivorship clause's 60-day requirement did not begin until after Ms. Porter died. The following is defendant's position. Ms. Ayala died 58 days after Ms. Porter. Hence, Ms. Ayala did not satisfy the 60-day survivorship requirement. Ms. Ayala survived only 58 days after Ms. Porter's death. Thus, according to defendant, Ms. Ayala could recover nothing under the survivorship clause. Because Ms. Ayala could not recover anything, neither could her estate.

Defendant relies on *Burkett v. Capovilla* (2003) 112 Cal.App.4th 1444, 1447-1452 (*Burkett*). In *Burkett*, the settlor had two children, a daughter and a son. The settlor created a living trust in 1998. (*Id.* at pp. 1447-1448.) The trust instrument instructed the trust estate be used for the settlor's benefit during her lifetime. (*Id.* at p. 1448.) The trust contemplated distributions of the trust assets to her children. (*Ibid.*) The trust contained a survivorship clause which stated: "'Survivorship Requirements: For all gifts under this instrument, the beneficiary must survive for sixty (60) days before entitlement to such gifts.'" (*Ibid.*) The daughter died in September 2001 and the settlor died one month later. (*Ibid.*) In other words, the daughter died *before* the settlor. The trustee sought the probate court for permission to distribute the assets of the trust to the daughter's heirs. (*Ibid.*) The trustee reasoned the gift to the daughter was effective because she survived more than 60 days after the trust agreement was executed. (*Ibid.*) The probate court

14

ruled the 60-day survivorship requirement commenced on the day the settlor executed the trust agreement and not on the date of her death.  (*Ibid*.)

The appellate court reversed.  (*Burkett*, *supra*, 112 Cal.App.4th at p. 1452.)  The appellate court construed the survivorship clause to require survival after the settlor's death.  (*Id.* at p. 1450.)  Our colleague, Associate Justice Kenneth R. Yegan, concluded: "We must also give the words of the trust instrument their ordinary, grammatical meaning.  (§ 21122.)  In their ordinary usage, the terms 'survive' and 'survivorship' connote living past the date of another person's death.  This is especially true where, as here, the terms are used in a will or trust."  (*Ibid.* [fn. omitted].)

*Burkett* does not support defendant's position.  The appellate court further noted: "Settlor's living trust is concerned with disposing of her property after her death; until that time, each gift described in the instrument is revocable, as is the trust itself.  There is no gift described in the trust for which a beneficiary would have an 'entitlement' before the date of settlor's death."  (*Burkett*, *supra*, 112 Cal.App.4th at pp. 1450-1451.)  However, *Burkett* concerned only one settlor.  Here, there are two.  Mr. Porter died, creating an irrevocable trust upon his death.  Indeed, *Burkett* suggests the opposite of defendant's position--once the bypass trust became irrevocable upon Mr. Porter's death, the beneficiary, Ms. Ayala, would have an entitlement to the gift.  Entitlement to a gift did not necessarily require immediate distribution of the gift.  (See § 24, subd. (c) ["'Beneficiary' means a person to whom a donative transfer of property is made or that person's successor in interest, and . . . [¶] . . . [¶] [a]s it relates to a trust, means a person who has *any present or future interest*, vested or contingent."]  [emphasis added].)  The probate court did not err by concluding the Porter Family Trust's survivorship clause did not bar the Ayala estate from being a beneficiary of the bypass trust.

C. The Stipulated Facts Do Not Demonstrate Financial Abuse Or Undue Influence

Defendant argues there was insufficient evidence to support a finding she violated Welfare and Institutions Code section 15610.30.  Because the probate court ruled on

15

stipulated facts and questions of law, we review the order de novo.  (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888; *Yesson v. San Francisco Transportation Agency* (2014) 224 Cal.App.4th 108, 116.)  The parties do not dispute Ms. Ayala was a dependent adult as defined under Welfare and Institutions Code section 15610.23.

Welfare and Institutions Code section 15610.30 as it was in effect at the time of the relevant conduct, states:  "(a)  'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following:  [¶]  (1)  Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.  [¶]  (2)  Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use with intent to defraud, or both.  [¶]  (3)  Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 1575 of the Civil Code. . . .  [¶]  . . .  [¶]  (c)  For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult."  (Stats. 2008, ch. 475, § 1, pp. 3364-3365.)  Welfare and Institutions Code section 15610.30 concerning financial abuse was amended effective January 1, 2014.  (Stats. 2013, ch. 688, §2; see *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1355, fn. 3.)  No party argues the 2013 amendment affects the outcome of this appeal.

Plaintiff argues Welfare and Institutions Code section 15610.30, subdivision (a)(3) applies.  Plaintiff contends undue influence under Civil Code section 1575 occurred in the procurement of the hospital documents.  Civil Code section 1575 provides:  "Undue influence consists:  [¶]  1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; [¶]  2.  In taking an unfair

16

advantage of another's weakness of mind; or, [¶] 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

Our Supreme Court has described the role of undue influence in the context of wills and other estate planning documents as follows: "The principle that a will is invalid if procured by the undue influence of another predates the 1931 adoption of the Probate Code (see, e.g., *Estate of Ricks* (1911) 160 Cal. 467, 480), but is now codified in section 6104. Undue influence is pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency. (*Estate of Fritschi* (1963) 60 Cal.2d 367, 373-374; *Estate of Sarabia* (1990) 221 Cal.App.3d 599, 604-605; see also *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 182 [principles of undue influence applicable to estate plan formalized by simultaneously executed inter vivos trust and will].) [¶] Although a person challenging the testamentary instrument ordinarily bears the burden of proving undue influence (§ 8252), this court and the Courts of Appeal have held that a presumption of undue influence, shifting the burden of proof, arises upon the challenger's showing that (1) the person alleged to have exerted undue influence had a confidential relationship with the testator; (2) the person actively participated in procuring the instrument's preparation or execution; and (3) the person would benefit unduly by the testamentary instrument. (*Estate of Fritschi*, *supra*, 60 Cal.2d at p. 376; *Estate of Sarabia*, *supra*, 221 Cal.App.3d at p. 605; *Estate of Auen* (1994) 30 Cal.App.4th 300, 309; see also *id.* at p. 310 [where person alleged to have exerted influence was testator's attorney, any benefit other than compensation for legal services may be considered 'undue'].)" (*Rice v. Clark* (2002) 28 Cal.4th 89, 96-97, fn. omitted.) Our Supreme Court has held that the evidence of undue influence must exist at the time the relevant testamentary document is executed: "'"The unbroken rule in this state is that courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of 'a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made.'" (*Estate of Gleason* [(1913)]*,* 164 Cal. 756, 765.)'" (*Estate of Welch* (1954) 43 Cal.2d 173, 175-176.) Undue influence may be

17

demonstrated by circumstantial evidence.  (*In re Estate of McDevitt* (1892) 95 Cal. 17, 33; *Lintz v. Lintz*, *supra*, 222 Cal.App.4th at p. 1355.)  As noted, because the matter was litigated based upon stipulated facts, we conduct de novo review.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Alameda County Management Employees Assn. v. Superior Court* (2011) 195 Cal.App.4th 325, 339.)

We conclude the weight of the evidence fails to sustain a finding of undue influence.  The stipulated facts indicate:  Ms. Porter spoke to defendant; Ms. Porter was unhappy to find out that if Ms. Ayala predeceased her children, they would receive a share of the trust estate; Ms. Ayala suffered from cancer and was hospitalized on or about February 20, 2009; while Ms. Ayala was hospitalized, she was presented with the hospital documents which she executed; Ms. Ayala also signed a document which the parties "believed" to have been prepared by one of her sons; defendant opened a bank account for the benefit of Ms. Ayala and deposited $125,000 into it from the bypass trust account; defendant arranged for Ms. Ayala's funeral; and defendant paid Ms. Ayala's funeral expenses from the foregoing account.  The stipulated facts and undisputed evidence showed a notary public witnessed Ms. Ayala sign the waiver and agreement.  As noted, the notary public averred regarding the waiver and agreement,  "Ms. Ayala was very tired and had trouble holding the pen but she was able to coherently explain and consent to the content of the document."

No doubt, there is evidence of a motive on defendant's part to deprive Ms. Ayala's children of their share of Ms. Ayala's estate.  However, the evidence of undue influence and the like is virtually nonexistent.  There is no evidence from physicians or other qualified medical personnel that Ms. Ayala was unable to make rational and thoughtful decisions.  Other than the fact she was hospitalized for cancer, there are no medical records detailing her mental and physical condition. What is missing from this stipulated to evidentiary equation is evidence Ms. Ayala's mind and volition were overpowered before and at the time she executed the hospital documents.  (*Rice v. Clark*, *supra*, 28 Cal.4th at p. 96; *Hagen v. Hickenbottom, supra,* 41 Cal.App.4th at p. 182.)  Conducting

18

de novo review as we must, we conclude there is insufficient evidence of undue influence to permit the hospital documents to be invalidated.

Because we find no undue influence under Civil Code section 1575 occurred, there was no financial abuse of a dependent person under Welfare and Institutions Code section 15610.30, subdivision (a)(3). Welfare and Institutions Code section 15657.5 provides an award of attorney's fees and punitive damages when a defendant is found liable for financial abuse. Since we find no financial abuse occurred, attorney's fees and punitive damages may not be awarded under this section.

### D. The Stipulated Facts Do Not Demonstrate Violation Of Section 859

Section 859 provides: "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered by an action under this part. In addition, except as otherwise required by law, including Section 15657.5 of the Welfare and Institutions Code, the person may, in the court's discretion, be liable for reasonable attorney's fees and costs. The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part." As we previously explained, there was insufficient evidence of undue influence. We also found no financial abuse of a dependent adult under Welfare and Institutions Code section 15610.30. Accordingly, double damages under section 859 may not be awarded.

19

## IV.  DISPOSITION

The December 2, 2013 judgment is affirmed as to the survivorship clause issue. The judgment is reversed as to:  defendant being liable for financial abuse of a dependent adult under Welfare and Institutions Code section 15610.30, subdivision (a)(3); the order defendant pay attorney's fees, costs, and punitive damages under Welfare and Institutions Code section 15657.5; and the order defendant pay double damages and attorney's fees and costs under Probate Code section 859.  All parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

MINK, J.[*]

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.