[No. B162824. Second Dist., Div. Six. Oct. 30, 2003.]

DEBORAH L. BURKETT, as Trustee, etc., Plaintiff and Respondent, v. PETER CAPOVILLA, Defendant and Appellant.

■■■■■■■■■■■■■■■

COUNSEL

Robert O. Angle and Charles M. Oxton for Defendant and Appellant.

Archbald & Spray; Kenneth L. Moes for Plaintiff and Respondent.

OPINION

**YEGAN, J.**—Peter Capovilla (son) successfully appeals from the trial court's Order on Petition of Trustee for Instructions. The order instructs Deborah Burkett (trustee), the successor trustee of the Erma Mary Olivera Living Trust, to distribute the trust's primary asset to the issue of Olivera's (settlor) deceased daughter, Eleanor Rollings (daughter). Son contends the gift to daughter lapsed because she predeceased settlor. The trust instrument requires that beneficiaries survive for 60 days before they are entitled to receive any gift under the trust.

The trial court ruled that the trust instrument requires only that beneficiaries survive for 60 days after settlor executed the instrument. Because daughter satisfied that condition, the anti-lapse statute, Probate Code § 21110, applies and daughter's children take the asset in her place.[1]

On de novo review we conclude that the trial court erred. The trust instrument must be read to require that daughter survive for 60 days after settlor's death, not 60 days after she executed the trust instrument. Because daughter predeceased settlor, the gift to daughter lapsed. Because the trust instrument contains a survivorship requirement, the anti-lapse statute does not apply. Accordingly, we reverse and remand the matter for entry of a new order instructing the successor trustee to distribute the assets of the trust to settlor's heirs pursuant to paragraph 3.03 of the trust instrument. We reject son's second contention, that the trial court erred in instructing trustee to pay the administrative expenses of the trust first from an annuity settlor acquired after she created the trust and then from its other assets.

FACTS

Settlor had two children, one daughter and one son. In 1998, settlor placed her assets in a living trust using form documents prepared by a paralegal

---

[1] All statutory references are to the Probate Code unless otherwise stated. Section 21110 subdivision (a) provides: "[I]f a transferee . . . fails . . . to survive the transferor or until a future time required by the instrument, the issue of the deceased transferee take in the transferee's place . . . ." Subdivision (b) provides: "The issue of a deceased transferee do not take in the transferee's place if the instrument expresses a contrary intention or a substitute disposition. A requirement that the initial transferee survive the transferor or survive for a specified period of time after the death of the transferor constitutes a contrary intention."

service. The trust instrument instructs that the trust estate be used for settlor's benefit during her lifetime. Upon her death and after payment of her debts and final expenses, the trust estate is to be distributed according to the trust instructions. They provide that: "As per Erma Olivera's original intent on 3/14/74, Eleanor Daughter is to inherit the house located at 114 [So.] Alisos, Santa Barbara, California."[2] The trust instrument contemplates that daughter will also receive settlor's car, a checking account and three savings accounts. Son is to receive three other bank accounts. Paragraph 3.03 of the trust instrument states: "If no beneficiaries exist, the Successor Trustee shall give the remainder to the heirs of Erma Mary Olivera, their identities and shares to be determined under California law in effect on the date of execution of this instrument relating to succession of property." Paragraph 5.02 states, "Survivorship Requirements: For all gifts under this instrument, the beneficiary must survive for sixty (60) days before entitlement to such gifts."

Daughter died in September 2001. When settlor died about one month later, the only assets remaining in the trust estate were the house, one of the bank accounts designated for daughter, and a $30,000 annuity that daughter had purchased for settlor's benefit. The bank accounts designated for son no longer existed. Daughter was survived by three children, one of whom is the successor trustee.

Trustee petitioned the superior court for instructions on the distribution of the assets of the trust in light of her mother's death. She sought permission to distribute the assets to daughter' heirs, contending that the gift to daughter was effective because daughter survived more than 60 days after settlor executed the trust instrument, as required by paragraph 5.02. Because daughter satisfied the survivorship requirement, the trust instrument does not express an intention that the gift to her lapse if she predeceased settlor. Trustee contends the anti-lapse statute therefore applies and daughter's issue should take the assets in her place.

As indicated, the trial court ruled that the 60-day survivorship requirement imposed by paragraph 5.02 commenced on the day settlor executed the trust agreement and not on the date of her death. It declined to adopt appellant's theory of survival for 60 days from the trustor's death because it "requires the Court to add language not found in the document and, in this Court's view, would defeat the intention of the settlor, who ordinarily makes her estate plan with reference to the objects of her bounty as they existed at the time and as though her trust took effect at the date of its execution." Because daughter

---

[2] The trust actually owns only 50 percent of the house. As a result of transactions in 1966 and March 1974, daughter owned the remaining 50 percent as a tenant in common with settlor.

satisfied that condition, the gift to her did not lapse at her death and her heirs were entitled to take the house in her place under subdivision (a) of section 21110.

DISCUSSION

We exercise de novo review because the interpretation of this written instrument does not require us to resolve conflicts in extrinsic evidence. (*Estate of Guidotti* (2001) 90 Cal.App.4th 1403, 1406 [109 Cal.Rptr.2d 674].) The California Probate Code applies the same general rules of interpretation to "a will, trust, deed and any other instrument." (§21101.) Our first priority is to construe the trust " ' "according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible." ' " (*Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [59 Cal.Rptr.2d 2, 926 P.2d 969], quoting *Estate of Russell* (1968) 69 Cal.2d 200, 205–206 [70 Cal.Rptr. 561, 444 P.2d 353], quoting *Estate of Wilson* (1920) 184 Cal. 63, 66–67 [193 P. 581]; see also § 21102, subd. (a).) Statutory rules of construction apply "where the intention of the transferor is not indicated by the instrument." (§ 21102, subd. (b); see *Newman v. Wells Fargo Bank, supra,* 14 Cal.4th at p. 134 ["Only if the terms are ambiguous will the court resort to presumptions which create a legal presumption of intent . . . ."].) We give the words of the instrument their "ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained." (§ 21122.)

■ As a general rule, a transfer that is to occur on the transferor's death lapses if the transferee dies first. (§ 21109, subd. (a).) Section 21110, the "anti-lapse" statute, creates an exception to the general rule where the transferee is "kindred" of the transferor. (§ 21110, subd. (c).) If a kindred transferee fails to survive the transferor, "or until a future time required by the instrument, the issue of the deceased transferee take in the transferee's place" unless the instrument "expresses a contrary intention or a substitute disposition." (§ 21110, subd. (a), (b).) A requirement that the transferee survive the transferor, or survive for a specified period after the transferor's death "constitutes a contrary intention." (§ 21110, subd. (b).)

Settlor's trust instrument instructed that specific assets be distributed to designated beneficiaries after her death. If no beneficiary exists when the assets are available for distribution, paragraph 3.03 instructs the successor trustee to distribute them to settlor's heirs. Here, the only assets to be distributed after settlor's death were those designated for daughter. But daughter was not alive when the distribution was to occur. Section 21110 permits daughter's heirs to take in her place unless the trust instrument expresses a contrary intention or a substitute disposition.

This is where the trust instrument may be ambiguous. Paragraph 5.02 requires: "For all gifts under this instrument, the beneficiary must survive for sixty (60) days before entitlement to such gifts." The provision does not specify whether settlor intended for the 60-day period to commence on the day she executed the trust instrument or on the date of her death. If the 60 days commence on the day settlor signed the trust instrument, the gift to daughter does not lapse and is taken by her heirs under section 21110. If it begins on the date of settlor's death, then the gift lapsed because daughter predeceased settlor. Pursuant to paragraph 3.03 of the trust instrument, the trust estate must be divided among settlor's heirs, including son.

Trustee contends the 60-day period should commence on the date settlor signed the trust instrument because, under the common law, the beneficiaries of a trust acquire an immediate, equitable interest in the trust estate. (See, e.g., *Randall v. Bank of America* (1941) 48 Cal.App.2d 249, 254–255 [119 P.2d 754] [because beneficiary's interest vested immediately upon creation of trust, the heir of predeceased beneficiary receives trust estate on settlor's death]; Note, *Why Limit a Good Thing? A Proposal to Apply the California Anti-Lapse Statute to Revocable Living Trusts* (1992) 43 Hastings L.J. 1391, 1405 ["whereas a will confers no rights until the testator dies, a trust creates an immediate interest making the beneficiary an equitable owner of the trust res" [fns. omitted].) In addition, trustee contends, this construction uses as its starting point the date on which the settlor is speaking, i.e., the date she executed the trust instrument. It is also consistent with the Probate Code's admonition that a testator's intention to avoid application of the anti-lapse statute must be clearly expressed. (*Estate of Casey* (1982) 128 Cal.App.3d 867, 873 [180 Cal.Rptr. 582, 198 Cal.Rptr. 170].)

We are not persuaded. ■ The same rules of construction apply to a trust as to a will. (§ 21101.) As a result, the common law distinction on which trustee relies should not be controlling. ■ We must also give the words of the trust instrument their ordinary, grammatical meaning. (§ 21122.) In their ordinary usage, the terms "survive" and "survivorship" connote living past the date of another person's death.[3] This is especially true where, as here, the terms are used in a will or trust. Settlor's living trust is concerned with disposing of her property after her death; until that time, each gift described in the instrument is revocable, as is the trust itself. There is no gift described in the trust for which a beneficiary would have an "entitlement"

---

[3] Common definitions of the term "survive," include: "To live longer than; outlive . . . [,]" (American Heritage Dict. (2d college ed. 1982) p. 1224), and "to remain alive after the death of . . . ." (Webster's Collegiate Dict. (10th ed. 1999) p. 1187.) Black's Law Dictionary defines a "survivor" as "One who survives another; one who outlives another; one who lives beyond some happening . . . ." (Black's Law Dict. (6th ed. 1990) p. 1446, col.1.) It defines survivorship as "The living of one of two or more persons after the death of the other or others." (*Id.* at p. 1446, col. 2.)

before the date of settlor's death. It would be inconsistent for the survivorship period to commence on some earlier date, such as the date on which she executed the instrument.

Reading the 60-day survivorship period to commence on the date of settlor's death, rather than on the date she executed the instrument, is consistent with the established rule that "a testamentary trust vests interests in the beneficiaries at the death of the testator . . . ." (*Estate of Logan* (1978) 84 Cal.App.3d 717, 726 [148 Cal.Rptr. 819]; *Estate of Newman* (1956) 146 Cal.App.2d 780, 781 [304 P.2d 748]; *In re Riemer's Estate* (1945) 69 Cal.App.2d 634, 635 [159 P.2d 677].) There is no evidence that settlor was aware of the related common law rule that the beneficiaries of a trust immediately acquire an equitable interest in the trust estate, even if their right to possession of the estate vests only after the settlor's death. (*Randall v. Bank of America, supra,* 48 Cal.App.2d at pp. 254–255.) There is no reason to assume that a lay person would know about this relatively obscure distinction, or that she would have attempted to draft around it by imposing a survivorship requirement related to the date on which she executed the trust instrument rather than to the date of her death.

We cannot agree with the trial court that commencing the survivorship period on the date of settlor's death requires us to "add language not found in the document . . . ." The terms "survivorship" and "survive" refer, by definition, to survival after settlor's death. We are not adding language to reach this result. We are simply giving the terms their ordinary meaning.

Moreover, the net effect of the trial court's order does add language to the trust. Newly phrased section 5.02 would now read: "Survivorship Requirements: For all gifts under this instrument, the beneficiary must survive for sixty (60) days *after the execution of this trust instrument* before entitlement to such gifts." (Italics added.) Finally, it seems to us that while settlor may have wanted the house to go to daughter, there is no indication whatsoever that she wanted it to go solely to daughter's issue if daughter did not survive her. Thus, the intention of the settlor is not defeated by our ruling.

■ Because daughter predeceased settlor, the gift to her lapsed (§ 21109) unless section 21110, the anti-lapse statute, applies. We conclude that it does not. Subdivision (b) of section 21110 provides that "The issue of a deceased transferee do not take in the transferee's place if the instrument expresses a contrary intention or a substitute disposition. A requirement that the initial transferee survive the transferor . . . constitutes a contrary intention." (§ 21110, subd. (b).) Paragraphs 3.03 and 5.02 require beneficiaries to survive settlor and therefore express an intention contrary to that of the anti-lapse statute.

PAYMENT OF ADMINISTRATIVE EXPENSES

The trial court instructed trustee to pay the administrative expenses of the trust from the annuity and then to divide any remaining funds from the annuity between son on the one hand and the three grandchildren on the other. Son contends this was error because the trust instrument directs that expenses be paid from the entire trust estate. He further notes that this issue becomes moot if the remainder of the trial court's order is reversed. We disagree, on both points.

■ The Probate Code provides that the shares of beneficiaries will abate in a specified order, to pay the expenses of a trust or estate, unless the instrument provides to the contrary. (§§ 21400–21402.) "Property not disposed of by the instrument" is the first statutory source from which expenses are to be paid. (§ 21402, subd. (a).) Here, the annuity is the only asset that is not disposed of by the trust instrument. The trial court properly instructed trustee to pay the trust expenses from that source before drawing funds from the other assets of the trust. We reject son's contention that the trust instrument provides for an alternate abatement. ■ General statements that the trustee shall pay expenses "out of the trust estate" or "from the estate," are not sufficiently specific to override the abatement order established by section 21402.

## CONCLUSION

The Order on Petition of Trustee for Instructions is reversed. The matter is remanded for entry of a new order instructing the successor trustee to distribute the trust assets to the heirs of Erma Mary Olivera, pursuant to paragraph 3.03 of the trust instrument. That portion of the order instructing the successor trustee to pay the administrative expenses of the trust first out of the proceeds of the annuity is affirmed. Costs to appellant.

Gilbert, P. J., and Coffee, J., concurred.