Filed 6/26/23 Estate of Jones CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of DEBRA LYNNE JONES, Deceased. | B319459 |
| | (San Luis Obispo County Super. Ct. No. 19PR0059) |
| BARRY VANDERKELEN, as Administrator, etc., | |
| Petitioner and Respondent, | |
| v. | |
| TOM W. JONES, Individually and as Trustee, etc., | |
| Objector and Appellant. | |
| | |
| TOM W. JONES, Individually and as Trustee, etc., | (San Luis Obispo County Super. Ct. No. 20PR0059) |
| Plaintiff and Appellant, | |
| v. | |
| BARRY VANDERKELEN, as Administrator, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Luis Obispo County, Hernaldo J. Baltodano, Judge. Affirmed.

M. Jude Egan for Objector and Appellant and Plaintiff and Appellant.

Carmel & Naccasha and Victor J. Herrera for Petitioner and Respondent and Defendant and Respondent.

_____

Tom W. Jones (Tommy) seeks to reverse a judgment of the probate court interpreting the Jones Family Trust (Family Trust) executed by his parents, Kenneth Jones (Kenneth) and Mary Jones (Mary) naming Tommy and his sister, Debra L. Jones (Debbie) as successor trustees and beneficiaries.[1] The probate court ruled the terms of the Family Trust required that when Debbie died intestate some years after the deaths of her parents, her share of the Family Trust was to pass to her estate. In so ruling, the court rejected Tommy's claim that Debbie's failure to take full distribution of her share prior to her death meant it lapsed and passed to him. We conclude the court properly interpreted the Family Trust and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts[2]

In September 1977, Mary and Kenneth created the Family Trust. It provides that Kenneth and Mary, as settlors, were also cotrustees; that upon the death of either Kenneth or Mary, the surviving spouse

_____

[1] For clarity and convenience, we use first names for the individuals involved, as stated in the Family Trust and/or the parties' briefs. The trust instrument also refers to Kenneth and Mary's children as "Tommy Jones" and "Debbie Jones."

[2] These facts are taken from the Joint Statement of Undisputed Material Facts submitted by the parties and/or the trust instrument, including Amendments and Schedules A–D.

2

and settlor would become the sole trustee of the Family Trust; that upon the death of the surviving spouse, Kenneth and Mary's children (Tommy and Debbie) would become cotrustees; and that upon the death of either Debbie or Tommy, the surviving child of Kenneth and Mary would become the sole trustee of the Family Trust.

In April 1992, Kenneth and Mary amended and restated the Family Trust, but the amendment did not alter the successor trustee provisions. The trust instrument describes Debbie as an unmarried adult with no children and Tommy as a married adult with two adult children.

Kenneth died in approximately 1993. Pursuant to the Family Trust, Mary became the sole trustee upon his death, and the trust estate was divided into two separate trust shares designated as Trust "S" (Survivor's Trust), containing Mary's share, and Trust "C" (Creditor's Exemption Trust), containing Kenneth's share.

Mary amended the Family Trust in 2008 to create M.N. Jones Properties, LP and M.N. Jones Associates, LLC, in which she, Tommy and Debbie each held an ownership interest. At some point, Debbie took some, but not all distributions from the Family Trust.

On May 30, 2017, Mary died, and Tommy and Debbie became cotrustees as well as beneficiaries. Each of the two beneficiaries was to receive a 50 percent share of the Family Trust.

On January 24, 2019, Debbie died intestate. Tommy became sole successor trustee and beneficiary of the Family Trust.

## B. Underlying Litigation

The underlying litigation consists of two consolidated probate cases: The first case, *Estate of Debra Lynne Jones* (Super. Ct. San Luis Obispo County, No. 19PR0059) (Debbie's Estate) involved a Probate Code section 850 petition to establish Debbie's Estate's claim of ownership to property and for an order directing its transfer to Debbie's Estate. The second case, *In re Jones Family Trust of 1977* (Super. Ct. San Luis Obispo County, No. 20PR0059), involved the Family Trust's petition for final distribution of the trust assets to the sole beneficiary and termination of the trust without accounting.

3

The parties, Barry VanderKelen, the administrator of Debbie's Estate (administrator), and Tommy, the successor trustee and beneficiary of the Family Trust, stipulated to having a consolidated evidentiary hearing. The sole issue was whether Debbie's Estate or Tommy was entitled to her share of the Family Trust. At the conclusion of the hearing, the court issued a written ruling finding for Debbie's Estate. The court ordered Tommy to transfer Debbie's share in the Family Trust to the administrator. Following entry of the judgment, Tommy timely filed a notice of appeal.

## DISCUSSION

### A. Standard of Review

Where, as here, there is no conflict in the evidence, interpretation of a trust instrument is a legal question reviewed de novo. (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439; *Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168.)

### B. Debbie's Estate Has Standing

At the outset, we address and reject Tommy's claim that Debbie's Estate lacks standing. " 'A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits.' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345.) Tommy did not raise a standing issue in the probate court. Nonetheless, "[a] party's standing can be raised at any time in the litigation, even for the first time on appeal." (*Applera Corp. v. MP Biomedicals, LLC* (2009) 173 Cal.App.4th 769, 785.)

According to Tommy, Debbie's Estate lacks standing to contest Debbie's failure to distribute the Family Trust assets before her death because it "is a claim by Debra against Debra." This assertion has nothing to do with whether Debbie's Estate has standing to sue.

"To have standing to sue, a person, or those whom he [or she] properly represents, must ' "have a real interest in the ultimate adjudication because [he or she] has [either] suffered [or] is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." ' " (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th

4

1024, 1031–1032.)  Debbie's Estate, as represented by the administrator, has an " 'actual and substantial interest' " in the distribution of Debbie's share of the Family Trust and would be injured by an order that her share had lapsed and passed to Tommy.  (*Ibid.*; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1062.)  ["An executor or trustee of an estate is the real party in interest for purposes of bringing a claim on behalf of those estates"].)  The administrator, acting on behalf of Debbie's Estate, has standing in this case.  (See Prob. Code, § 9820;[3] Code Civ. Proc., § 369, subd. (a).)

Tommy also contends Kathy Barbee (Kathy) lacks standing.  Kathy is purportedly Debbie's registered domestic partner from whom Debbie was allegedly estranged.  However, Kathy is not a party to either the underlying consolidated suit or this appeal.  We do not reach any issues Tommy raises concerning Kathy or her interests.

## C.  Debbie's Estate Is Entitled to Her Distributive Share of the Trust[4]

"The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument."

---

[3] Further statutory references are to the Probate Code unless otherwise indicated.

[4] As a preliminary matter, we agree with the administrator that our review of the record is limited to the pleadings, trial briefs, and evidence before the probate court at the time of the evidentiary hearing.  The probate court "reviewed the pleadings in this consolidated action including, but not limited to, the parties' trial briefs filed on November 3, 2021, supplemental trial briefs filed on December 9 and 10, 2021, Tom's separate statement of additional material facts filed on December 9, 2021, and the parties' joint statement of undisputed material facts filed on December 10, 2021."  We disregard (1) other evidence admitted in subsequent proceedings in this consolidated case and submitted by Tommy as part of the record on appeal, and (2) assertions of "fact" in Tommy's opening brief unsupported by evidence admitted at the hearing.  (See *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625 [" 'The appellate court is . . . confined in its review to the proceedings which took place in the court below and are brought up for review in a properly prepared record on

5

(§ 21102, subd. (a).) " ' "In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." ' " (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 944.) Tommy is not contending any language of the trust instrument is ambiguous. Thus, we consider its plain language, interpreting words in their ordinary and grammatical sense, unless a different meaning can be clearly determined. (*Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 972; accord, *Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949; § 21122.)

The Family Trust consists of the Trust Declaration, articles I through V containing one or more numbered paragraphs, and Schedules A through D. Article II sets forth provisions for the distribution of the Family Trust's income and principal during the lifetime of the settlors and upon the death of the surviving settlor. Schedule D is the "Distribution of Residue" provision that is primarily at issue. It comes into play because, before she died, Mary never exercised her powers of appointment over the residue of Trusts C and S under article II, paragraphs 2.7.2 and 2.7.3.

Schedule D states:

"Upon the death of the surviving Settlor, the successor Trustee(s) then in office shall either continue or terminate the Trusts as follows:

"As to Trust C, the balance then remaining shall be divided as follows:

"One-half to our daughter, DEBRA L. JONES.

"One-half to our son, TOMMY W. JONES.

"If Debbie Jones fails to survive to take distribution without leaving surviving lineal issue, her share shall lapse and go to Tommy Jones.

---

appeal.' [Citation.] 'Statements of alleged fact in the briefs on appeal which are not contained in the record and were never called to the attention of the trial court will be disregarded by this court on appeal' "].)

6

"If Tommy Jones fails to survive to take distribution, his share shall pass to his issue by right of representation.

"AS TO TRUST S:

"Trust S shall be modified, continued or terminated, as directed by the surviving settlor.  If no other direction is made, however, then it shall be distributed to the same persons and in the same manner as Trust C."

The plain meaning of Schedule D is that upon Mary's death, the interests of Tommy and Debbie in the Family Trust vested, such that the two beneficiaries each had a 50 percent share in the residue of Trusts C and S.  Debbie satisfied Schedule D's condition precedent of surviving the surviving settlor to take distribution.  Debbie's Estate is thus entitled to receive the balance of her interest in the Family Trust.

In opposition, Tommy acknowledges in his opening brief that he and Debbie "had vested rights in the [Family] Trust assets" upon Mary's death in 2017.  Nonetheless, Tommy argues the probate court ignored relevant provisions in the trust instrument that clearly show the settlors intended:  (1) that Debbie had to survive until distribution was complete as a condition precedent; (2) that if Debbie died, her share was to pass solely to the family's lineal descendants.  We discuss each contention in turn.

1. **Tommy's claim that Debbie had to survive complete distribution**

Tommy argues Schedule D required Debbie to survive to take a full distribution to receive her share of the remainder of Trusts C and S.  According to Tommy, given the option in Schedule D " 'to continue or terminate' " the trusts upon Mary's death, Debbie chose to continue the trusts without taking a complete distribution before she died.  Consequently, Debbie " 'fail[ed] to survive to take distribution' " and her Estate was not entitled to receive her share.

Tommy's position is simply wrong in several respects.  Nothing in the trust instrument gives either Tommy or Debbie the unilateral authority to continue or terminate the Family Trust at his or her discretion.  Instead, Schedule D's phrase that "the successor trustees

. . . shall either continue or terminate" Trusts C and S relates to the explicit requirements of other distributive provisions: Article II, paragraphs 2.7.4, 2.7.5, 2.7.6, and 2.7.7 dictate the Family Trust is to continue for the benefit of the settlors' grandchildren or great grandchildren of certain ages if either or both successor trustees fail to survive the surviving settlor. If the requirements of these paragraphs are met, then the Family Trust shall "continue" as "divided" between Tommy and Debbie. Hence, the reference in Schedule D. However, these four paragraphs do not control here because both Tommy and Debbie survived Mary.

On the other hand, article II, paragraphs 2.7.1, 2.7.2, and 2.7.3 address the termination of the Family Trust and distribution of the C and S Trusts triggered by the death of the surviving settlor and survival of successor trustees, which did occur here. Pursuant to these paragraphs, the successor trustees shall terminate the Family Trust and distribute "all of the then remainder of Trust S, together with the remainder of Trust C" to Tommy and Debbie as directed in Schedule D. Hence, Schedule D's reference to the termination of the two trusts.

We also find no support in the trust instrument for Tommy's claim that while Debbie had a right to her share as vested upon Mary's death, her failure to survive to take full distribution means her Estate could not receive it. "Survive to take distribution" means to remain alive after another person has died. (*Burkett v. Capovilla* (2003) 112 Cal.App.4th 1444,1450 ["In their ordinary usage, the terms 'survive' and 'survivorship' connote living past the date of another person's death"].) "Failed to survive to take" does not mean "survived but failed to take," as Tommy would have us determine.

Finally, Tommy makes much of the concept of unreasonable delay, relying on *Estate of Taylor* (1967) 66 Cal.2d 855 and *Estate of Justesen* (1999) 77 Cal.App.4th 352. However, whether an administrator or a probate court unreasonably delayed the distribution of an estate, as discussed in those decisions, are not factual issues before us. The two cases are inapplicable.

## 2. Tommy's contention that distribution to Debbie's Estate is contrary to the settlors' intent

Tommy further contends the probate court's ruling that Debbie's Estate was to receive her share of the Family Trust is contrary to the settlors' "plain subjective general intent" to keep the assets in the family lineage. Tommy argues the effect of the court's ruling is that Kathy, Debbie's domestic partner, will be awarded half of Debbie's Estate. However, as we previously stated, issues pertaining to Kathy are not before us. Tommy is correct that Kenneth and Mary expressly declared the Family Trust was created "for the benefit of themselves and their descendants," particularly for their two children. The language of the trust instrument unambiguously states the family assets are to pass in equal shares to Tommy and Debbie, which is what happened here.

## DISPOSITION

The judgment awarding Debbie's share of the Family Trust to Debbie's Estate is affirmed. The administrator of Debbie's Estate is to recover costs on appeal.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

9