Filed 6/9/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re TUNG TRUST DATED OCTOBER 24, 2011 | B343197 (Los Angeles County Super. Ct. No.20STPB01034) |
| LILLIAN GAECKE, as Temporary Successor Trustee, etc., Plaintiff and Respondent, v. NICHOLAS YEH et al, Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Juarez, Judge. Reversed and remanded with directions.

Braunstein & Braunstein, Clark Anthony Braunstein and Annie Berlin for Defendants and Appellants.

Wright Kim Douglas and Jeffrey S. Cohen for Plaintiff and Respondent.

In 2011 Ya-Ching Tung established the Tung Trust, a revocable living trust, designating as successor beneficiaries her three children—son Lin-Chuan Yeh and daughters Lin-Chia Yeh and Lillian Gaecke.[1]  Lin-Chuan died in July 2016 and is survived by his three children, Nicholas, Savannah, and Joyce (the Yeh children).  After Tung died in May 2019, Gaecke, as temporary successor trustee of the Tung Trust, filed a petition in the probate court seeking a determination that the transfer of trust property to Lin-Chuan failed because he had predeceased Tung.  Over the opposition of the Yeh children, the court granted Gaecke's motion for summary adjudication, finding California's antilapse statute, codified in Probate Code section 21110,[2] did not apply to preserve the transfer of property to Lin-Chuan under the trust for the benefit of the Yeh children.  On appeal, the Yeh children contend the probate court erred in finding the antilapse statute did not apply.

California's antilapse statute provides that if the transferee under an instrument (including a trust or will) predeceases the transferor, if certain conditions are met, including that the instrument does not express a contrary intention, the transferee's issue (lineal descendants) stand in the shoes of the transferee

---

[1]    We refer to family members who use the Yeh surname by their given names.

[2]    Further undesignated statutory references are to the Probate Code.

and receive the benefit of the transfer.[3]  The antilapse statute prevents the unintended disinheritance of descendants of a transferee by creating a presumption that the transferor intended for the descendants to receive the transfer under the instrument in place of a transferee who has died by the time of the transfer.  If the antilapse statute does not apply, the transfer under the trust fails, and the distribution under the instrument is made under the laws of intestacy.

We agree with the Yeh children that the probate court erred in finding the Tung Trust expressed a "contrary intention" to override application of the antilapse statute under section 21110, subdivision (b).  The trust provided that if a person named in the trust failed to survive the transferor (Tung) for 30 days, "the person shall be considered to have predeceased the settlor."  What the trust did not say is that if the person named in the trust failed to survive Tung for 30 days, the person *would not receive the gift under the trust*.  In the absence of clear language indicating Tung's contrary intention to disinherit Lin-Chuan's issue (the Yeh children), the antilapse statute applied.

We therefore reverse the order granting Gaecke's motion for summary adjudication and direct the court to enter a new order denying the motion.

---

[3]  Section 50 defines the "'[i]ssue'" of a person to mean "all his or her lineal descendants of all generations."

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Tung Trust*

Tung, an unmarried woman,[4] established the revocable Tung Trust in October 2011.  She designated herself as trustee and Lin-Chuan, her oldest child, as successor trustee.  The trust estate included her residence located on 26th Street in Santa Monica (Santa Monica property), unspecified bank accounts, and the contents of safe deposit boxes.  Article 5, paragraph B of the trust provided that upon Tung's death, the trustee would distribute the assets in the estate to Tung's three children as follows: "any and all real property" would go to Lin-Chuan, and "[a]ll bank accounts where no beneficiary is designated" would go one-half to Lin-Chuan, one-third to Lin-Chia, and one-sixth to Gaecke.  The trust did not provide for any alternative disposition of the trust estate and did not include a residuary clause specifying how any assets not subject to specific transfers would be distributed.  The trust contained no express reference to the Yeh children (who were adults at the time it was established).

---

[4]    In 1974 Tung divorced Shih Chieh Yeh, the father of Gaecke, Lin-Chuan, and Lin-Chia; Shih Chieh died in 2010.  Shih Chieh held a 50 percent interest in Tung's Santa Monica property, the final distribution of which is the subject of a pending related action, *Estate of Shieh Yeh, Deceased* (Los Angeles County Super. Ct. case No. 20STPB03775).

Article 10 of the Tung Trust, titled "Miscellaneous Provisions,"[5] contains three provisions relevant to the parties' arguments. Paragraph J, titled "Survivor by 30 Days" (the survivor provision) states, "Except as otherwise specifically provided in this instrument, if any person named herein fails to survive a settler for thirty days, for all purposes of this trust, the person shall be considered to have predeceased the settlor." Paragraph A, titled "Additions to the Trust" (the additions provision), provides in part, "Any addition to a trust that at such time has been wholly distributed shall be distributed to the beneficiary of such trust or, if he or she shall not be living, to his or her then-living issue, on the principle of representation." Paragraph G, titled "No-Contest Clause," provides in part: "If any beneficiary under this trust . . . contests in any court the validity of this trust . . . or seeks otherwise to void, nullify, or set aside this trust or any of its provisions, then that person's right to take any interest given to him or her by this trust shall be determined as it would have been determined if that person had predeceased the execution of this declaration of trust without surviving issue."

B.    *Gaecke's Petition*

Lin-Chuan died on July 26, 2016. Tung died nearly three years later, on May 7, 2019. Lin-Chia died eight months after Tung, on January 3, 2020, without issue.

---

[5]    We omit block capitalization used in the Tung Trust.

Gaecke, as Tung's sole living child, initiated this action on February 3, 2020, filing an ex parte application in the probate court to be appointed successor trustee of the Tung Trust.[6]  On February 6 the probate court appointed Gaecke as the temporary successor trustee and authorized her to address pressing tax issues.

On May 13, 2020 Gaecke filed a combined petition (1) "to determine the existence of trust property"[7] and (2) "to ascertain trust beneficiaries and to determine distribution of the trust estate."  The petition was filed pursuant to sections 17200, subdivision (b)(4) and (10), 21110, and 21111 (among other Probate Code provisions).  Gaecke alleged the transfer to Lin-Chuan failed because he predeceased Tung, and thus the Yeh children were excluded as beneficiaries under section 21100, subdivision (b).  Further, she argued, Lin-Chuan's share reverted to Tung's estate under section 21111, subdivision (a)(3) (which applies to failed transfers), and should be divided according to the laws of intestacy.

On November 4, 2020 the Yeh children filed a response and objection to the petition, requesting in relevant part that the probate court deny Gaecke's request to exclude them as beneficiaries.  They argued that as Lin-Chuan's biological

---

[6]     Article 11, paragraph A of the Tung Trust specifies that in the event any trustee is "unable or unwilling to act as trustee," a court of competent jurisdiction may appoint a new trustee.

[7]     The petition alleged Tung maintained cash assets exceeding $1 million in 27 different bank accounts that are properly part of the trust estate.

6

children, they were entitled to take his place as beneficiaries in the Tung Trust under the antilapse statute.

C.      *Gaecke's Motion for Summary Adjudication*

On September 19, 2024 Gaecke filed a motion for summary adjudication of her "unlabeled" second cause of action for a determination that the transfer to Lin-Chuan under the Tung Trust failed and the Yeh children were excluded as beneficiaries. She argued that on the undisputed facts, the antilapse statute did not apply because the Tung Trust expressed a "contrary intention" under section 21110, subdivision (b), that Lin-Chuan was required to survive Tung. In particular, Gaecke argued that the survivor provision (art. 10, ¶ J) constituted a "requirement that the initial transferee survive the transferor or survive for a specified period of time after the death of the transferor," which, under section 21110, subdivision (b), "constitutes a contrary intention."

In their opposition, the Yeh children argued there existed triable issues of material fact "whether [Tung] expressed a clear and unambiguous intention" to prevent application of the antilapse statute. First, the Tung Trust instrument did not express a contrary intention. The survivor provision "merely provides a definition of when a transferee is determined to predecease the settlor [and] does not . . . impose a requirement that a beneficiary must survive the [s]ettlor in order for the gift to vest." No provision of the trust expressly stated that inheritance was conditioned on survival, and the trust's silence meant that Gaecke could not meet her burden to override the default application of the antilapse statute. Second, other provisions of the Tung Trust, including the additions provision

7

(art. 10, ¶ A), showed that Tung intended that her grandchildren should benefit under the trust (by providing for distribution to a beneficiary's "then-living issue"), and the no-contest clause (art. 10, ¶ G) showed that where Tung intended to exclude beneficiaries and their issue, she stated it expressly. Finally, the Yeh children argued extrinsic evidence showed that Tung spent time with the Yeh children, she expressed her dissatisfaction with Gaecke, and she intended that the Yeh children benefit from her estate after Lin-Chuan had died.

D. *The Probate Court's Ruling*

At the December 5, 2024 hearing on Gaecke's motion, the probate court announced its tentative ruling to grant the motion. The court explained that the survivor provision, although nested among the miscellaneous provisions, was unambiguous, and its use of the phrase "for all purposes of this trust" meant it was a survival requirement "that makes the anti-lapse statute inapplicable to the case because . . . there's this contrary intention on the part of the trustor . . . ." The court added, "I'm having a hard time reconciling what this section means otherwise. I looked . . . to see what other sections it could or would otherwise apply to and I don't see it." The Yeh children's attorney argued the survivor provision did not say "in that event [the issue] shall not take" or that there was a "requirement" that the transferee survive as described in section 21110, subdivision (b). The court responded that it had looked at the survival requirement in section 21110, subdivision (b), but continued to "think the instrument expresses a contrary intent to the anti-lapse statute with this provision." On that basis, the court granted the motion.

On December 31, 2024 the probate court entered an order granting the motion and finding the Tung Trust "expresses a different intention to the application of the anti-lapse statute, and the gifts to Lin-Chuan Yeh must therefore lapse." The Yeh children timely appealed.[8]

**DISCUSSION**

A.   *The Antilapse Statute and Standard of Review*

As a general matter, when the recipient of a trust benefit "fails to survive the transferor of an at-death transfer," the transfer fails.  (§ 21109, subd. (a).)  Under the antilapse statute, however, if the transferee is a close relative of the transferor, and the transferee predeceases the transferor, the transferee's issue

---

[8]   Gaecke filed a motion to dismiss the appeal on the basis the order granting summary adjudication was not an appealable final order because other issues of trust administration remained unresolved.  On June 30, 2025 we denied the motion.  The probate court's December 31, 2024 order constituted a final resolution of a discrete "proceeding concerning the internal affairs of a trust" to "[a]scertain[] beneficiaries and determin[e] to whom property shall pass or be delivered upon final or partial termination of the trust" (§ 17200, subd. (b)(4)), which was an appealable order.  (See Prob. Code, § 1304, subd. (a) [any final order in a proceeding under Prob. Code, § 17200 et seq. is an appealable order]; Code Civ. Proc, § 904.1, subdivision (a)(10) [appealable orders include an "order made appealable by the Probate Code"]; see also *Boys & Girls Club of Petaluma v. Walsh* (2008) 169 Cal.App.4th 1049, 1057 [order determining allocation of trust distributions resolved a request under section 17206, making it appealable under section 1304].)

9

are presumptively entitled to take the benefit in the place of the transferee.  (See *Estate of Mooney* (2008) 169 Cal.App.4th 654, 658 [summarizing law]; § 21110, subd. (a) ["if a transferee . . . fails or is treated as failing to survive the transferor . . . the issue of the deceased transferee take in the transferee's place in the manner provided in Section 240"];[9] *id.*, subd. (c) [for purposes of section 21110, "'transferee'" is limited to "a person who is kindred of the transferor" or that person's spouse].)

The antilapse statute is so-named "because the attempted devises protected by it would otherwise lapse and the property would pass instead by intestacy."  (*Estate of Mooney, supra*, 169 Cal.App.4th at p. 658.)  "'Antilapse statutes serve an extremely important function in the law, for they give effect to strong human impulses in some cases and, in others, to what are perceived as highly probable intentions.  They prevent unintended disinheritance of one or more lines of descent, by presumptively creating an alternative or substitute gift in favor of the descendants of certain of the decedent's predeceased relatives.'"  (*Id.* at pp. 658-659; accord, *Estate of Friedman* (1961) 198 Cal.App.2d 434, 437 [anti-lapse statute "enacts an exception to the general rule" of lapsed gifts "'based on the presumed desire of the testator to have gifts intended for certain persons go to

_____

[9]     Section 240 provides the mechanism for intestate division of the decedent's property into equal shares among living members of the nearest generation of issue and any deceased members of that generation with living issue (with the deceased member's share divided equally among the living issue).

their children or other descendants in lieu of disposition as lapsed gifts'"].)[10]

Although the antilapse statute creates a presumption in favor of familial transfers, under section 21110, subdivision (b), "[t]he issue of a deceased transferee do not take in the transferee's place if the instrument expresses a contrary intention or a substitute disposition." (See *Estate of Salisbury* (1978) 76 Cal.App.3d 635, 639 ["It is well settled that the California antilapse statute will not be applied where the testator has expressed, with sufficient clarity, a contrary intention," but if no contrary intent appears, the antilapse statute "must be read into the will."].) In particular, section 21110, subdivision (b), states, "A requirement that the initial transferee survive the transferor or survive for a specified period of time after the death of the transferor constitutes a contrary intention." (See *Burkett v. Capovilla* (2003) 112 Cal.App.4th 1444, 1450 (*Burkett*) [trust provision stating "'[f]or all gifts under this instrument, the beneficiary must survive for sixty (60) days before entitlement to such gifts'" constituted a survival requirement under § 21110, subd. (b), and "therefore express[ed] an intention contrary to that of the anti-lapse statute"].) In determining whether to apply the antilapse statute, "[t]he paramount question is whether such intent [against application of the antilapse statute] is plainly indicated [citation] or is shown with a reasonable degree of certainty." (*Salisbury*, at p. 639; accord, *Estate of Friedman,*

---

[10] The antilapse statute applies in the same manner to wills and trusts. (*Burkett v. Capovilla* (2003) 112 Cal.App.4th 1444, 1450; see § 21101 [rules under §§ 21101 to 21140 apply to wills and trusts].)

11

*supra*, 198 Cal.App.2d at p. 437 ["We must decide whether or not the face of the will shows with a reasonable degree of certainty that the testatrix did not intend the anti-lapse section to apply."].)

We review the provisions of the Tung Trust de novo to determine whether the trust expresses an intention, consistent with section 21110, subdivision (b), that the antilapse statute should not apply. (*Burkett, supra*, 112 Cal.App.4th at p. 1449 [reviewing de novo whether anti-lapse statute applied because "the interpretation of this written instrument does not require us to resolve conflicts in extrinsic evidence"]; see *Estate of Russell* (1968) 69 Cal.2d 200, 213 ["'an appellate court is not bound by a construction of a document based solely upon the terms of the written instrument without the aid of extrinsic evidence, where there is no conflict in the evidence'"].)[11]

In interpreting the provisions of a trust, "the intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." (§ 21102, subd. (a); see *Estate of Cairns* (2010) 188 Cal.App.4th 937, 944 (*Cairns*) ["'"In construing trust instruments . . . the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker."'"].) "All parts of an instrument are to be

---

[11] The probate court did not consider any extrinsic evidence as to Tung's intent, the relevant facts and documents are undisputed, and the parties do not challenge the court's evidentiary rulings. Because we conclude the Tung Trust did not express an intention contrary to application of the antilapse statute, we do not reach the Yeh children's arguments based on extrinsic evidence.

12

construed in relation to each other and so as, if possible, to form a consistent whole." (§ 21121; see *Cairns*, at p. 944 [""'the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it'""]; *In re Raymond's Estate* (1950) 96 Cal.App.2d 808, 814 ["The entire scheme of disposition must be considered, the property disposed of, persons named as devisees and legatees; words used should be considered in reference to the context and construed according to their surroundings."].)

In addition, "[p]rovisions in a testamentary instrument are to be given a liberal and reasonable interpretation rather than a narrow and technical one, . . . and the apparent meaning of particular words, phrases and provisions is to be subordinated to the testator's plan or dominant purpose." (*Cairns, supra*, 188 Cal.App.4th at pp. 947-948.) The words in a trust "are to receive an interpretation that will give every expression some effect" and are "given the ordinary and grammatical meaning, unless the intention to use them in another sense is clear and their intended meaning can be ascertained." (§§ 21120, 21122.) "Preference is to be given to an interpretation of [a trust] that will prevent intestacy or failure of a transfer, rather than one that will result in an intestacy or failure of a transfer." (§ 21120.)

B.    *The Tung Trust Did Not Express a Contrary Intention To Override the Antilapse Statute*

The Yeh children contend the probate court erred in holding that the survivor provision (art. 10, ¶ J) constituted a "contrary intention" under section 21110, subdivision (b), to override the antilapse statute. We agree.

13

The survivor provision states in relevant part, "[I]f any person named herein fails to survive a settler for thirty days, for all purposes of this trust, the person shall be considered to have predeceased the settlor." On its face, this language is not a "requirement that the initial transferee survive the transferor or survive for a specified period of time after the death of the transferor" in order for the issue to receive the gift under the trust. (§ 21110, subd. (b).) It does not state, explicitly or implicitly, that a gift or transfer is conditioned on the beneficiary surviving the settlor; rather, it merely establishes circumstances in which a beneficiary who survives the settlor will be deemed nonetheless to have predeceased her. This is starkly different from the survival requirement at issue in *Burkett, supra*, 122 Cal.App.4th at page 1450—the only case cited by either party relating to operation of a survival requirement under section 21110, subdivision (b). The survivor provision in *Burkett* stated that for all gifts under the instrument, "the beneficiary must survive for sixty (60) days before entitlement to such gift." (*Burkett*, at p. 1450.) The *Burkett* provision expressly addressed gifts *and* used mandatory survival language; the Tung Trust did neither.[12]

---

[12] In her respondent's brief, Gaecke argues *Burkett* is inapposite because in that case the probate court did not decide whether the survivor provision constituted a survival requirement under section 21110, subdivision (b) (which does not appear to have been disputed), instead addressing whether a 60-day survival requirement ran from the date of the settlor's death or the execution of the instrument. (*Burkett, supra*, 122 Cal.App.4th. at p. 1448.) Although *Burkett* is not controlling,

14

We acknowledge, as Gaecke argues, that our analysis is not limited to whether the survivor provision, standing alone, included specific and conditional language showing a contrary intent. Rather, we must determine whether the Tung Trust, viewed holistically in light of the survivor provision, expressed a contrary intention. (See *Cairns, supra*, 188 Cal.App.4th at p. 944; *In re Raymond's Estate, supra*, 96 Cal.App.2d at p. 814.) The probate court reasoned that the survivor provision in the Tung Trust must be interpreted to create a survival requirement, because the court could not find any other sections in the trust to which the provision "could or would otherwise apply" besides limiting the transfers to Tung's children under article 5, and the court could not "reconcile it in any other way." The court's reasoning is not persuasive.

Although courts must give effect to each provision when possible (§ 21120), it is clear the Tung Trust includes "miscellaneous" provisions in article 10 that are boilerplate with no evident application to other sections of the Tung Trust or to Tung's circumstances at the time she established the trust. For example, paragraph M governs payments to "minor beneficiaries" through a conservator, which is a commonsense provision to safeguard distributions when children are involved. But it has no application to Tung, whose three beneficiaries were older adults. Likewise, paragraph J's boilerplate provision defining a category

---

it is still instructive because it is the only published case addressing a survivor provision in the context of section 21110. Moreover, Gaecke relied on *Burkett* to argue in her summary adjudication motion that article 10, paragraph J showed a contrary intent to override the antilapse statute; it does not.

15

of persons who are deemed to have predeceased the settlor "for all purposes" of the trust does not mean the definition must be construed so that it is relevant to property transfers under the trust a decade after the trust was created. And the inclusion of this boilerplate language certainly does not mean we must interpret a boilerplate provision unreasonably, writing into the trust a survival requirement that has an extremely consequential impact on the central transfer provisions of the trust yet is silent on whether the transfer to a beneficiary who does not survive for 30 days fails. If Tung intended for the transfer to Lin-Chuan to fail if he predeceased her (or if he survived her by only 29 days), she could have simply and unambiguously modified article 5, paragraph A, to say "[a]ny and all real property" would be distributed "to settlor's son Yeh, Lin-Chuan, *unless he does not survive Tung*."

Contrary to the probate court's concern, there are reasons why Tung might have included paragraph J to implement her estate plan that have nothing to do with an intent to override the antilapse statute. For one, as the harsh no-contest provision suggests, Tung may have been particularly concerned about challenges to the trust, and she may have wished to avoid disputes over whether a specific beneficiary died before or after she did. What if, for example, Tung and Lin-Chia were killed in a car crash, and their bodies were later recovered from the vehicle? Lin-Chia's heirs—who cannot invoke the antilapse statute because Lin Chia had no issue—would have an incentive to try to establish that Tung died first (otherwise, Lin-Chia's share would revert back to Tung's estate under section 21109).

16

Seemingly far-fetched, scenarios like this are not confined to bar examinations: California adopted the Uniform Simultaneous Death Act in 1945,[13] which applies under certain circumstances, including intestacy, to create "effective, workable and equitable rules applicable to the ever-increasing number of cases where two or more persons have died under such circumstances that there is no sufficient evidence to indicate that they have died otherwise than simultaneously." (*In re Schmidt's Estate* (1968) 261 Cal.App.2d 262, 270; *Estate of Sugino* (1968) 267 Cal.App.2d 591, 592 ["The Uniform Act . . . was adopted in 1945 to provide a more realistic answer to the problem of who died first in a common accident."]; see *In re Rowley's Estate* (1967) 257 Cal.App.2d 324, 326, 332-333 [addressing application of Uniform Simultaneous Death Act where the "lifeless bodies" of the grantor and beneficiary of a gift were found after a car crash].) Section 6403, subdivision (a), now provides for intestate succession that "[a] person who fails to survive the decedent by 120 hours is deemed to have predeceased the decedent for the purpose of intestate succession, and the heirs are determined

---

[13] The California Uniform Simultaneous Death Act is now codified in sections 220 to 234. Section 220 (formerly section 296) provides that "if the title to property or the devolution of property depends upon priority of death and it cannot be established by clear and convincing evidence that one of the persons survived the other, the property of each person shall be administered or distributed, or otherwise dealt with, as if that person had survived the other."

17

accordingly."[14]  Section 6211 similarly provides for statutory wills that "[a] person who fails to survive the decedent by 120 hours is deemed to have predeceased the decedent for the purpose of a California statutory will. . . ."

There is no similar statutory provision for trusts and non-statutory wills:  As discussed, section 21109 provides (in cases where the antilapse statute does not apply) that "a transferee who fails to survive the transferor of an at-death transfer or until any future time required by the instrument does not take under the instrument."  Instead, Tung included a standard provision in the Tung Trust to accomplish the same purpose by defining under what circumstances a beneficiary predeceases Tung, albeit with a longer survival period.  The Tung Trust's survivor provision, which effectively eliminates property transfers to a soon-to-be-deceased beneficiary who will see little or no benefit from the gift, also serves other functions.  For example, such a provision might be desirable to avoid rapid, successive administration (or probate) of two estates (the Tung Trust followed by the newly-deceased beneficiary's estate).

Whatever the purpose of the survivor provision, we must assume Tung understood California's antilapse statute at the

---

[14]    Section 6403 was amended in 1989 (Stats. 1989, ch. 544, § 5), in response to the recommendation of the California Law Revision Commission to add the 120-hour provision to create "a more complete solution" to the problems created by the simultaneous death of a decedent and the decedent's heir by requiring the potential heir to survive the decedent by at least 120 hours to take by intestacy.  (See 20 Cal. L. Revision Comm'n Reports 1 (1990), Recommendation relating to 120-Hour Survival Requirement, p. 28.)

time she established the Tung Trust.  (See *Estate of Salisbury, supra*, 76 Cal.App.3d at p. 639 [antilapse statute is read into a will absent expressed contrary intention "[s]ince a testator is presumed to know the law at the time of making the will"].)  In other words, Tung expected the Yeh children would receive the Santa Monica property (and cash) if Lin-Chuan did not survive Tung, but the cash transfers to Tung's daughters without issue would lapse under section 21009, subdivision (a).  In this light, it is unreasonable to infer that Tung included the survivor provision in the trust to disinherit her grandchildren by Lin-Chuan in a highly oblique manner, and it is far more reasonable to infer she was trying to reduce any uncertainty and the risk her 2011 distribution plan would be challenged.

Indeed, we must give priority to Tung's overall intent in construing the trust (*Cairns, supra*, 188 Cal.App.4th at p. 944), and other provisions indicate that she did not intend to exclude the Yeh children if Lin-Chuan predeceased her.  As discussed, the additions provision provides that "[a]ny addition to a trust that at such time has been wholly distributed shall be distributed to the beneficiary of such trust or, if he or she shall not be living, to his or her then-living issue, on the principle of representation."  Because the children of deceased beneficiaries are entitled to trust additions, it makes no sense to interpret the trust to conclude these same grandchildren are excluded from benefiting from the principal estate because their parent predeceased Tung (or died 29 days after Tung).  Further, as the Yeh children argue, the no-contest clause states that a person who contests the trust will be treated as if "that person had predeceased the execution of this declaration of trust *without surviving issue*."  (Italics added.)  The reference to "surviving issue" in this provision makes no

19

sense if Tung intended for all transfers to fail when a beneficiary predeceased her (or was deemed to be predeceased).

Finally, we must give preference to an interpretation of the Tung Trust "that will prevent intestacy or failure of a transfer, rather than one that will result in an intestacy or failure of a transfer." (§ 21120; accord, *Estate of Duke* (2015) 61 Cal.4th 871, 892.) The transfer of the Santa Monica property went exclusively to Lin-Chuan, and the trust contained no alternative disposition or residuary clause. Without the anti-lapse statute, the transfer would fail and the Santa Monica property would revert to Tung's estate, and it appears (absent evidence of a will) that the property would be distributed through intestacy laws. (See § 21111, subds. (a)(3) ["If the transferring instrument does not provide for an alternative disposition and does not provide for the transfer of a residue, . . . the property is transferred to the decedent's estate."] & (d) ["If failure of a future interest results in an intestacy, the property passes to the heirs of the transferor determined pursuant to Section 21114."].)

Because the Tung Trust does not contain a survival requirement pursuant to section 21110, subdivision (b), and does not otherwise evidence a "contrary intention," the antilapse statute applies, and Lin-Chuan's transfer passes to the Yeh children.

## DISPOSITION

The December 31, 2024 order granting Gaecke's motion for summary adjudication is reversed. The matter is remanded with directions for the probate court to vacate its order granting the motion and to enter a new order denying summary adjudication of Gaecke's cause of action to determine that the transfer to Lin-

20

Chuan did not pass to the Yeh children under the antilapse statute.  The Yeh children are to recover their costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.


GIZA, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.